Meara, Adm., Appellant, *v.* Hewitt et al.

Argued November 21, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Norman M. Wilson, Jr.,* with him *Duffy, North, Duffy & Wilson,* for appellant.

*William H. Kinkead, III,* and *Wright, Spencer, Manning & Sagendorph,* for Robert A. Hewitt and Mary I. Hewitt, appellees.

*John F. Christie, III,* with him *Samuel H. High, Jr.,* and *High, Swartz, Roberts & Seidel,* for Prince George Inn, Incorporated and H. Lyle Houpt, appellees.

OPINION BY MR. JUSTICE O'BRIEN, January 24, 1974:

This appeal arises from a decree in equity which denied appellant, Anna C. Meara, Administratrix d.b.n.c.t.a. of the Estate of William G. Meara, Deceased, the relief she sought against appellees, Robert A. Hewitt and Mary I. Hewitt, his wife, Prince George

Inn, Incorporated, and H. Lyle Houpt. Appellant sought the cancellation of a certain mortgage executed by the decedent in favor of Prince George Inn, Incorporated, a Pennsylvania corporation, owned by appellee H. Lyle Houpt. The mortgage was subsequently assigned to appellees Robert A. Hewitt and Mary I. Hewitt (the Hewitts). The case was heard by a chancellor on January 14, 1972, who combined the within action with an action to quiet title, filed by the decedent's heir, Frederick A. Patrick, and an action in mortgage foreclosure filed by the Hewitts. The actions were combined due to the fact that all of the actions turned on the common legal question of whether the mortgage executed by the decedent was valid. After a hearing, the chancellor entered a decree nisi denying the relief sought by appellant, exceptions were taken and denied, and a final decree was entered. This appeal followed.

On April 1, 1968, the deceased, an employee of the corporation and a legal client of Houpt, a former attorney, executed a mortgage on the real estate he owned in Horsham Township, Montgomery County, to the corporation, as mortgagee, in the face amount of $50,000. The mortgage was given in exchange for a $50,000 judgment note of the corporation which was subsequently to be exchanged for stock representing a twenty-five percent interest in the corporation.

The decedent died on April 17, 1968, and Houpt was appointed executor of the decedent's estate, pursuant to the provisions of decedent's will.[1] On June 21, 1968, the corporation, by Houpt, its president and sole stockholder, assigned the Meara mortgage to the Hewitts, for a stated consideration of $100. In March of 1970, the mortgagee corporation became insolvent.

---

[1] Houpt subsequently resigned and the decedent's widow, appellant, was appointed in his place.

The estate argues that the mortgage in question is unenforceable against it because Houpt, while acting as attorney for the decedent, took advantage of the attorney-client relationship when he allowed the decedent to enter into a mortgage in favor of a corporation of which Houpt was the sole owner, and that the mortgage agreement is now unenforceable for failure of consideration.

Since the corporation was wholly owned by Houpt, the chancellor found that the decedent was, in fact dealing with Houpt, not the corporate entity, and that the attorney-client relationship of the decedent and Houpt constituted a confidential relationship, but went on to find no abuse of that relationship in the facts of this case.

In *Kribbs v. Jackson,* 387 Pa. 611, 129 A. 2d 490 (1957), we laid out the standard of conduct that must prevail between an attorney and client regarding business transactions between the two. We stated: "That relation [attorney and client] is so confidential in its nature that it calls for the exercise of the most perfect good faith. In transactions between counsel and client, no shadow of anything like deception or unfair dealing upon part of an attorney can be countenanced. In every case in which complaint is made, the courts will scrutinize the transaction with jealous care to see that there is no relaxation of the rule. Owing to confidence bestowed upon him, the attorney is presumed to be able to strongly influence his client; hence, the law often declares transactions between them void which between other persons would be unobjectionable. Unless the transaction is fair and conscionable, it is deemed a constructive fraud." At pages 621-22.

In *Points v. Gibboney,* 340 Pa. 522, 17 A. 2d 365 (1941), we stated: "The burden is upon him, as attorney, to show that he did not gain a personal advantage by misrepresenting the legal situation or by failing to

make it plain to those whom it was his duty to advise and protect." At page 527.

The chancellor, by his adjudication, seemed to take the view that the burden was upon appellant to show an abuse of the confidential relationship. However, as we have explained, the burden should have been placed upon Houpt to prove that he did not abuse that relationship, that he fully disclosed the facts of the transaction to his client, and that the transaction was fair and conscionable. We must thus remand for a reconsideration by the chancellor of whether Houpt met his burden. If it is found that Houpt did not sustain his burden, then, contrary to the contentions of the Hewitts, the mortgagor's defenses will be good against them. See *Harrison v. Galilee Bapt. Church,* 427 Pa. 247, 234 A. 2d 314 (1967).

Decree vacated and case remanded to the Court of Common Pleas, Civil Trial Division, of Montgomery County, for proceedings consistent with this opinion. Costs to be borne by appellees.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.